| Fill in this information to identify the case: | |
|---|---|
| Debtor 1  Marwan Noweder | |
| Debtor 2  Hanan Noweder | |
| (Spouse, if filing) | |
| United States Bankruptcy Court  Northern District of Illinois | |
| Case number: 19-03338 | |

FILED
U.S. Bankruptcy Court
Northern District of Illinois
3/7/2019
Jeffrey P. Allsteadt, Clerk

EXHIBIT
A

## Official Form 410
## Proof of Claim

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

| 1. Who is the current creditor? | The Master Operating Association of Churchill Club |
|---|---|
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |

| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? |
|---|---|

| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>The Master Operating Association of Churchill Club<br>Name<br><br>Keay & Costello, P.C.<br>128 S. County Farm Road<br>Wheaton, IL 60187<br><br>Contact phone  630-690-6446<br>Contact email  ben@keaycostello.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one): | **Where should payments to the creditor be sent? (if different)**<br><br>Name<br><br><br><br>Contact phone<br>Contact email |
|---|---|---|

| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____<br>MM / DD / YYYY |
|---|---|

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |
|---|---|

Official Form 410                                    Proof of Claim                                    page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | | |
|---|---|---|
| 6. Do you have any number you use to identify the debtor? | ☒ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ | |
| 7. How much is the claim? | $ 4721.51 | Does this amount include interest or other charges?<br>☐ No<br>☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Association common expense | |
| 9. Is all or part of the claim secured? | ☐ No<br>☒ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☒ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**   Association lien<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**   $ 280000.00<br>**Amount of the claim that is secured:**   $ 4721.51<br>**Amount of the claim that is unsecured:**   $ 0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**   $ _____<br><br>**Annual Interest Rate** (when case was filed)   _____ %<br>☒ Fixed<br>☐ Variable | |
| 10. Is this claim based on a lease? | ☒ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____ | |
| 11. Is this claim subject to a right of setoff? | ☒ No<br>☐ Yes. Identify the property: _____ | |

Official Form 410                          Proof of Claim                           page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies | $ |
| | * Amounts are subject to adjustment on 4/1/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   3/7/2019
MM / DD / YYYY

/s/ Benjamin J. Rooney
Signature

Print the name of the person who is completing and signing this claim:

Name: Benjamin J. Rooney
First name   Middle name   Last name

Title:

Company: Keay & Costello, P.C.
*Identify the corporate servicer as the company if the authorized agent is a servicer*

Address: 128 S. County Farm Road
Number   Street
Wheaton, IL 60187
City   State   ZIP Code

Contact phone: 630-690-6446   Email: ben@keaycostello.com

Official Form 410   Proof of Claim   page 3

## Account History Report
### Churchill Club Master Assoc.

Marwan T & Hanan Noweder                    00210-9954

| Trans Date | Transaction | Charges | Payments | Balance | Date Billed | Reference | Comments |
|---|---|---|---|---|---|---|---|
| 10/30/2018 | Late Fee | 25.00 | | 4,321.51 | | Late Fee | Late Fee: 10/30/2018 |
| 11/29/2018 | Check | | -255.00 | 4,066.51 | | 590396841 | KEAY & COSTELLO, P.C. |
| 11/30/2018 | Late Fee | 25.00 | | 4,091.51 | | Late Fee | Late Fee: 11/30/2018 |
| 12/19/2018 | Check | | -255.00 | 3,836.51 | | 594627665 | Keay & Costello |
| 12/30/2018 | Late Fee | 25.00 | | 3,861.51 | | Late Fee | Late Fee: 12/30/2018 |
| 01/01/2019 | Master Association Assessr | 535.00 | | 4,396.51 | | Annual Charges | Recurring Charges: 01/01/2019 |
| 01/30/2019 | Late Fee | 25.00 | | 4,421.51 | | Late Fee | Late Fee: 01/30/2019 |
| 3-7-19 | BK Legal Fee | 300.00 | | 4,721.51 | | | Letter & Proof of Claim |

## Account History Report
## Churchill Club Master Assoc.

**Marwan T & Hanan Noweder**         00210-9954

| Trans Date | Transaction | Charges | Payments | Balance | Date Billed | Reference | Comments |
|---|---|---|---|---|---|---|---|
| 01/01/2018 | Master Association Assessr | 535.00 |  | 4,334.69 |  | Annual Charges | Recurring Charges: 01/01/2018 |
| 01/30/2018 | Late Fee | 25.00 |  | 4,359.69 |  | Late Fee | Late Fee: 01/30/2018 |
| 02/28/2018 | Late Fee | 25.00 |  | 4,384.69 |  | Late Fee | Late Fee: 02/28/2018 |
| 03/14/2018 | Legal Fee | 561.75 |  | 4,946.44 |  | 82866 | Legal Fee |
| 03/30/2018 | Late Fee | 25.00 |  | 4,971.44 |  | Late Fee | Late Fee: 03/30/2018 |
| 04/02/2018 | Legal Fee | 312.75 |  | 5,284.19 |  | 84180 | Legal Fee |
| 04/30/2018 | Late Fee | 25.00 |  | 5,309.19 |  | Late Fee | Late Fee: 04/30/2018 |
| 05/09/2018 | Legal Fee | 300.00 |  | 5,609.19 |  | 85487 | Legal Fee |
| 05/30/2018 | Late Fee |  | -25.00 | 5,584.19 |  | Credit | Reverse 04/30/2018 Late Fee |
| 05/30/2018 | Late Fee |  | -25.00 | 5,559.19 |  | Credit | Reverse 03/30/2018 Late Fee |
| 05/30/2018 | Late Fee |  | -25.00 | 5,534.19 |  | Credit | Reverse 02/28/2018 Late Fee |
| 05/30/2018 | Late Fee |  | -25.00 | 5,509.19 |  | Credit | Reverse 01/30/2018 Late Fee |
| 05/30/2018 | Late Fee | 25.00 |  | 5,534.19 |  | Late Fee | Late Fee: 05/30/2018 |
| 05/31/2018 | Misapplied Payment |  | -575.00 | 4,959.19 |  | LB3587 B3642643 | 02.02.18 Moved From 210-9941 |
| 06/13/2018 | Late Fee |  | -25.00 | 4,934.19 |  | Credit | Reverse 05/30/2018 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,909.19 |  | Credit | Reverse 12/30/2017 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,884.19 |  | Credit | Reverse 11/30/2017 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,859.19 |  | Credit | Reverse 10/30/2017 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,834.19 |  | Credit | Reverse 05/30/2017 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,809.19 |  | Credit | Reverse 04/30/2017 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,784.19 |  | Credit | Reverse 03/30/2017 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,759.19 |  | Credit | Reverse 02/28/2017 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,734.19 |  | Credit | Reverse 01/30/2017 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,709.19 |  | Credit | Reverse 12/30/2016 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,684.19 |  | Credit | Reverse 11/30/2016 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,659.19 |  | Credit | Reverse 10/30/2016 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,634.19 |  | Credit | Reverse 09/30/2016 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,609.19 |  | Credit | Reverse 08/30/2016 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,584.19 |  | Credit | Reverse 07/30/2016 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,559.19 |  | Credit | Reverse 06/30/2016 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,534.19 |  | Credit | Reverse 05/30/2016 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,509.19 |  | Credit | Reverse 04/30/2016 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,484.19 |  | Credit | Reverse 03/30/2016 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,459.19 |  | Credit | Reverse 02/29/2016 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,434.19 |  | Credit | Reverse 12/30/2015 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,409.19 |  | Credit | Reverse 11/30/2015 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,384.19 |  | Credit | Reverse 10/30/2015 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,359.19 |  | Credit | Reverse 09/30/2015 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,334.19 |  | Credit | Reverse 08/30/2015 Late Fee |
| 06/13/2018 | Late Fee |  | -25.00 | 4,309.19 |  | Credit | Reverse 07/30/2015 Late Fee |
| 06/13/2018 | Late Fee |  | -100.00 | 4,209.19 |  | Credit | Reverse 06/15/2015 Late Fee |
| 06/13/2018 | Late Fee |  | -300.00 | 3,909.19 |  | Credit | Reverse 06/15/2015 Late Fee |
| 06/13/2018 | Late Fee |  | -300.00 | 3,609.19 |  | Credit | Reverse 06/15/2015 Late Fee |
| 06/13/2018 | Legal Fee | 607.32 |  | 4,216.51 |  | interest per judge | interest per judge |
| 06/27/2018 | Legal Fee | 250.00 |  | 4,466.51 |  | 86787 | Legal Fee |
| 06/30/2018 | Late Fee | 25.00 |  | 4,491.51 |  | Late Fee | Late Fee: 06/30/2018 |
| 07/12/2018 | Legal Fee | 250.00 |  | 4,741.51 |  | 88149 | Legal Fee |
| 07/30/2018 | Late Fee | 25.00 |  | 4,766.51 |  | Late Fee | Late Fee: 07/30/2018 |
| 08/21/2018 | Legal Fee |  | -10.00 | 4,756.51 |  | Adj 07.12.18 | Waived Partial Legal Fee |
| 08/30/2018 | Late Fee | 25.00 |  | 4,781.51 |  | Late Fee | Late Fee: 08/30/2018 |
| 09/24/2018 | Check |  | -255.00 | 4,526.51 |  | 9472327446 | Keay & Costello |
| 09/30/2018 | Late Fee | 25.00 |  | 4,551.51 |  | Late Fee | Late Fee: 09/30/2018 |
| 10/09/2018 | Check |  | -255.00 | 4,296.51 |  | 9472327604 | KEAY & COSTELLO, P.C. |

## Account History Report
## Churchill Club Master Assoc.

Marwan T & Hanan Noweder     00210-9954

| | | |
|---|---|---|
| Community Address: | 730 Charismatic Drive | |
| | Oswego, IL 60543 | |
| Mailing Address: | 730 Charismatic Drive | |
| | Oswego, IL 60543 | |

| | |
|---|---|
| Date Settled: | Mon Mar 05, 2012 |
| Unit Type: | 02 - Hoa |
| Location: | 368 |
| Last payment date: | Wed Dec 19, 2018 |
| Last payment amount: | 255.00 |
| Current balance: | 4,421.51 |

| Trans Date | Transaction | Charges | Payments | Balance | Date Billed | Reference | Comments |
|---|---|---|---|---|---|---|---|
| 06/15/2015 | Master Association Assessr | 504.00 | | 504.00 | | Annual Charges | Recurring Charges:01/01/2013 |
| 06/15/2015 | Master Association Assessr | 504.00 | | 1,008.00 | | Annual Charges | Recurring Charges:01/01/2014 |
| 06/15/2015 | Master Association Assessr | 504.00 | | 1,512.00 | | Annual Charges | Recurring Charges:01/01/2015 |
| 06/15/2015 | Late Fee | 300.00 | | 1,812.00 | | Late Fee | Jan -Dec 2013 $25 each |
| 06/15/2015 | Late Fee | 300.00 | | 2,112.00 | | Late Fee | Jan -Dec 2014 $25 each |
| 06/15/2015 | Late Fee | 100.00 | | 2,212.00 | | Late Fee | Jan - May 2015 $25 each |
| 06/15/2015 | Legal Fee | 47.50 | | 2,259.50 | | 14049-222090 | Legal Fee FC 1/1/13 |
| 06/15/2015 | Legal Fee | 47.50 | | 2,307.00 | | 14088 14049-00 | Legal Fee FC 4/9/14 |
| 07/30/2015 | Late Fee | 25.00 | | 2,332.00 | | Late Fee | Late Fee: 07/30/2015 |
| 08/30/2015 | Late Fee | 25.00 | | 2,357.00 | | Late Fee | Late Fee: 08/30/2015 |
| 09/30/2015 | Late Fee | 25.00 | | 2,382.00 | | Late Fee | Late Fee: 09/30/2015 |
| 10/30/2015 | Late Fee | 25.00 | | 2,407.00 | | Late Fee | Late Fee: 10/30/2015 |
| 11/30/2015 | Late Fee | 25.00 | | 2,432.00 | | Late Fee | Late Fee: 11/30/2015 |
| 12/30/2015 | Late Fee | 25.00 | | 2,457.00 | | Late Fee | Late Fee: 12/30/2015 |
| 01/01/2016 | Master Association Assessr | 525.00 | | 2,982.00 | | Annual Charges | Recurring Charges: 01/01/2016 |
| 02/29/2016 | Late Fee | 25.00 | | 3,007.00 | | Late Fee | Late Fee: 02/29/2016 |
| 03/30/2016 | Late Fee | 25.00 | | 3,032.00 | | Late Fee | Late Fee: 03/30/2016 |
| 04/30/2016 | Late Fee | 25.00 | | 3,057.00 | | Late Fee | Late Fee: 04/30/2016 |
| 05/30/2016 | Late Fee | 25.00 | | 3,082.00 | | Late Fee | Late Fee: 05/30/2016 |
| 06/03/2016 | Legal Fee | 23.75 | | 3,105.75 | | 55922 | Legal Fee - FC |
| 06/16/2016 | Delinq Proc Fee - Assn | 75.00 | | 3,180.75 | | Attorney | Processing Fee |
| 06/30/2016 | Late Fee | 25.00 | | 3,205.75 | | Late Fee | Late Fee: 06/30/2016 |
| 07/30/2016 | Late Fee | 25.00 | | 3,230.75 | | Late Fee | Late Fee: 07/30/2016 |
| 08/30/2016 | Late Fee | 25.00 | | 3,255.75 | | Late Fee | Late Fee: 08/30/2016 |
| 09/13/2016 | Legal Fee | 47.50 | | 3,303.25 | | 60228 | Legal Fee - FC |
| 09/30/2016 | Late Fee | 25.00 | | 3,328.25 | | Late Fee | Late Fee: 09/30/2016 |
| 10/30/2016 | Late Fee | 25.00 | | 3,353.25 | | Late Fee | Late Fee: 10/30/2016 |
| 11/30/2016 | Late Fee | 25.00 | | 3,378.25 | | Late Fee | Late Fee: 11/30/2016 |
| 12/30/2016 | Late Fee | 25.00 | | 3,403.25 | | Late Fee | Late Fee: 12/30/2016 |
| 01/01/2017 | Master Association Assessr | 525.00 | | 3,928.25 | | Annual Charges | Recurring Charges: 01/01/2017 |
| 01/30/2017 | Late Fee | 25.00 | | 3,953.25 | | Late Fee | Late Fee: 01/30/2017 |
| 02/28/2017 | Late Fee | 25.00 | | 3,978.25 | | Late Fee | Late Fee: 02/28/2017 |
| 03/30/2017 | Late Fee | 25.00 | | 4,003.25 | | Late Fee | Late Fee: 03/30/2017 |
| 04/30/2017 | Late Fee | 25.00 | | 4,028.25 | | Late Fee | Late Fee: 04/30/2017 |
| 05/30/2017 | Late Fee | 25.00 | | 4,053.25 | | Late Fee | Late Fee: 05/30/2017 |
| 06/30/2017 | Late Fee | 25.00 | | 4,078.25 | | Late Fee | Late Fee: 06/30/2017 |
| 07/30/2017 | Late Fee | 25.00 | | 4,103.25 | | Late Fee | Late Fee: 07/30/2017 |
| 08/08/2017 | Late Fee | | -25.00 | 4,078.25 | | Credit | Reverse 06/30/17 Late Fee |
| 08/08/2017 | Late Fee | | -25.00 | 4,053.25 | | Credit | Reverse 07/30/17 Late Fee |
| 08/09/2017 | Delinq Proc Fee - Assn | | -75.00 | 3,978.25 | | Credit | Reverse 06/16/16 Delinq Proc F |
| 09/06/2017 | Misapplied Payment | | -525.00 | 3,453.25 | | LB3585 B3500770 | 08.24.17 Moved From 210-9941 |
| 10/20/2017 | Delinq Proc Fee - Assn | 75.00 | | 3,528.25 | | Attorney | Processing Fee |
| 10/30/2017 | Late Fee | 25.00 | | 3,553.25 | | Late Fee | Late Fee: 10/30/2017 |
| 11/17/2017 | Legal Fee | 196.44 | | 3,749.69 | | INV 77616 | LEGAL FEE |
| 11/30/2017 | Late Fee | 25.00 | | 3,774.69 | | Late Fee | Late Fee: 11/30/2017 |
| 12/30/2017 | Late Fee | 25.00 | | 3,799.69 | | Late Fee | Late Fee: 12/30/2017 |

Page 1 of 3                                                                                                 User: pdeering -- Wed Feb 20, 2019 07:16 pm

**DECLARATION OF COVENANTS,
CONDITIONS & RESTRICTIONS
FOR THE MASTER OPERATING
ASSOCIATION OF CHURCHILL CLUB**

200300044070
Filed for Record in
KENDALL COUNTY, ILLINOIS
PAUL ANDERSON
12-19-2003 At 03:13 PM.
DECLARATION         50.00

AUODO 1576

This Declaration made this 15th day of December, 2003, by Pinnacle Corporation (hereinafter referred to as "Declarant").

**WITNESSETH:**

WHEREAS, Declarant owns fee simple title to a certain parcel of real estate in the County of Kendall, State of Illinois, legally described in Exhibit "A" attached hereto and made a part hereof (the "Property"); and

WHEREAS, Declarant desires to develop a single family development on the Property to be known as Churchill Club (hereinafter referred to as the "Development"); and

WHEREAS, Declarant intends to subject the Property to the covenants, conditions and restrictions, easements, charges and liens hereinafter set forth each and all of which is and are for the reasonable benefit of the owners and public welfare and more specifically for the purpose of enhancing and protecting the value of aforesaid property and insuring maintenance of the Common Area, in conformity with all applicable ordinances, and for collecting and disbursing the assessments and charges hereinafter provided for, and for such other purposes as hereinafter described;

NOW THEREFORE, Declarant hereby declares that the Property shall be held, sold and conveyed subject to the following covenants, conditions, restrictions, easements, charges and liens which are intended to constitute a general plan for the benefit of and enforcement by all present and future owners of any of the lots and units in the subdivision and the Village of Oswego, so as to protect the value and desirability of the property submitted thereto and be binding on and inure to the benefit of all parties having any right, title or interest in the described properties or any part thereof, their heirs, successors and assigns.

PREPARED BY:
Kathleen Kang
1806 S. Highland Avenue
Lombard, IL 60148

RETURN TO:
Kathleen Kang
1806 S. Highland Avenue
Lombard, IL 60148



6.11    No Member shall be entitled to challenge, either directly or indirectly, any action of the Board of the Association in its dealings with the Declarant or Developer that occur prior to the Turnover Date on grounds of conflict of interest.

## ARTICLE VII

## ASSESSMENTS

7.1.    Each Owner, by taking title to a Lot or Unit, with the exception of both Declarant and Developer, shall be deemed to have covenanted and agreed to pay to the Association annual assessments or charges and special assessments for capital improvements and unforeseen expenses, to be collected from time to time as hereinafter provided. The annual and special assessments, together with such interest thereon and cost of collection thereof, as hereinafter provided, shall be a lien on the Lot or Unit against which each such assessment is made. Each such assessment, together with such interest, costs and reasonable attorneys' fees shall be the personal obligation of the person who was the Owner of such Lot or Unit at the time when the assessment fell due. The personal obligation of an Owner shall not pass to his successors in title unless expressly assumed by them.

7.2.    The assessments levied by the Association shall be used exclusively for the purpose of promoting the health, safety, and welfare of the residents of the Property and in particular for the improvement and maintenance of the Property, services and facilities devoted to these purposes and related to the use and enjoyment of the Common Area. Such uses shall include, without limitation, the cost of all general real estate taxes, insurance, repair, replacement and maintenance and other charges required or permitted by this Declaration and the cost of those items that the Board shall determine to be necessary or desirable to meet the purposes of the Association, including without limitation the establishment and maintenance of a Contingency and Replacement Reserve. The annual assessments provided for herein shall commence for each Lot and Unit on the day of delivery of a deed to such Lot or Unit Owner.

7.3.    Each year on or before November 1, the Board will estimate the total amount of maintenance expenses necessary to pay the cost of wages, materials, taxes, insurance, services, supplies and any other necessary or desirable items which will be required during the ensuing calendar year (January 1 - December 31) for services authorized by the Board, together with a reasonable amount necessary to fund the Contingency and Replacement Reserve, and shall, on or before December 1, notify each Owner in writing of the amount of such estimate ("Estimated Cash Requirement"). Such Estimated Cash Requirement shall be prepared on a line-item basis. The Estimated Cash Requirement shall be assessed equally among all of the Owners, excluding the Declarant and Developer. On or before January 1 of the ensuing fiscal year, each Owner shall be obligated to pay to the Board, or as it may direct, the annual assessment made pursuant to this Section 7.3. On or before the date of the annual meeting of each calendar year, the Board shall furnish to all Owners an itemized accounting of the maintenance expenses for the preceding fiscal

11

year actually incurred and paid, together with a tabulation of the amounts collected from the Owners pursuant to assessments made during such year and showing the net amount over or short of the actual expenditures, plus reserves. The Board shall upon demand at any time furnish a certificate in writing signed by an officer or agent of the Association, setting forth whether the assessments on a specified Lot or Unit have been paid. Such certificates shall be conclusive evidence of payment or nonpayment of any assessment thereon.

7.4. (a) The Board shall build up and maintain a reserve for the replacement of capital improvements, other authorized capital expenditures and for unforeseen expenditures (the "Contingency and Replacement Reserve"). Capital improvements and expenditures which may become necessary during the year shall be charged first against the Contingency and Replacement Reserve. Any expenditure from the Contingency and Replacement Reserve having a cost in excess of Fifteen Thousand Dollars ($15,000.00) shall require the prior approval of the Members holding two-thirds (2/3) of the votes of the Association.

(b) If the Contingency and Replacement Reserve proves inadequate for any reason, including nonpayment of any Owner's assessment, the Board may, at any time, levy a special assessment, which shall be assessed equally among the Owners, with the exception of both Declarant and Developer. The Board shall serve notice of any such special assessment on all such Owners by a statement in writing giving the amount and reasons therefor, and such special assessment shall become effective and fully payable ten (10) days after the delivery or mailing of any such notice of assessment.

(c) Developer shall collect, from each initial purchaser of a Lot or Unit at the closing of the sale of any such Lot or Unit, a sum to be determined, which amount may be mutually adjusted by the Board and Declarant from time to time, and which amount shall be deposited in the Contingency and Replacement Reserve. On the Turnover Date, the Developer shall transfer all funds in the Contingency and Replacement Reserve account to the Association and the Association shall hold and apply such funds for the purposes set forth in this Section 7.4.

7.5. When the first Board elected by the Members hereunder takes office, it shall determine the Estimated Cash Requirement for the period commencing on the first day of the month following the Turnover Date and ending on December 31 of the calendar year in which the Turnover Date occurs. The initial Estimated Cash Requirement shall be assessed equally to all Owners, with the exception of both Declarant and Developer.

7.6. The failure or delay of the Board to prepare to serve the Estimated Cash Requirement or any Owner shall not constitute a waiver or release in any manner or any Owner's obligation to pay his share of such Estimated Cash Requirement as herein provided, as and when the Estimated Cash Requirement shall be determined, and, in the absence of the preparation of the Estimated Cash Requirement, the Owner shall continue to pay his share of such Estimated Cash Requirement at the then existing annual rate established for the previous calendar year, subject to adjustment at such time as the Estimated Cash Requirement has been prepared and the Owners have been notified

12

thereof.

7.7.     The Board shall keep full and correct books of account in chronological order of the receipts and expenditures pertaining to the Common Area, specifying and itemizing the maintenance and repair expenses of the Common Area and any other expenses so incurred. Such records and the vouchers authorizing the payments described therein shall be available for inspection by any Owner or any representative or an Owner duly authorized in writing, or any holder of a Mortgage at such reasonable time or times during normal business hours when requested by an Owner or by the holder of a Mortgage. Upon ten (10) days' prior written notice to the Board, any Owner shall be furnished a statement of his account, which statement shall set forth the amount of any unpaid assessments or other charges due and owing from such Owner.

7.8.     All funds collected hereunder shall be held and expended for the purposes designated herein, and are hereby held in trust for the benefit, use and account of all Owners through the Association. All funds not otherwise employed shall be deposited from time to time to the credit of the Association in such banks, trust companies or other depositories as the Board may select.

7.9.     Any assessments or other charges which are not paid when due shall be delinquent. If the assessment or charge is not paid within thirty (30) days after the due date, the assessment shall bear interest from and after the due date at the lesser of the rate of twelve percent (12%) per annum or the highest rate allowed by law, and the Association may bring an action at law against the Owner personally obligated to pay the same or foreclose the lien against the Owner's Lot or Unit, and interest, costs and reasonable attorneys' fees incurred in any such action shall be added to the amount of any such overdue assessment. To the extent permitted by any decision or any statute or law now or hereafter effective, the amount of any delinquent and unpaid charges or assessments, and interest costs and fees as above provided, shall be and become a lien or charge against the Lot or Unit of any such Owner when payable and may be foreclosed by an action brought in the name of the Board as in the case of foreclosure of mortgage liens against real estate. The directors of the Board and their successors in office, acting on behalf of the other Owners, shall have the power to bid in the interest so foreclosed at foreclosure sale, and to acquire and hold, lease, mortgage and convey any interest so acquired. To the fullest extent permitted by law, any court shall be authorized to restrain the defaulting Owner from reacquiring his interest at such foreclosure sale.

7.10.    In addition to the rights and remedies set forth in Section 7.9, if any Owner shall default in the payment, when same shall be due, of the aforesaid charges or assessments and said default shall continue for thirty (30) days after written notice to said Owner by the Board, of the amount of unpaid charges or assessments and a demand for payment thereof, the Board shall have the right to declare said default a forcible detainer of the dwelling and shall have the right, on behalf of the other Owners, to enter and take possession of the dwelling from any defaulting Owner, to put out said Owner, or any occupant or tenant claiming by, through or under said Owner, using such reasonable force as the Board shall deem necessary under the circumstances and, in addition, to exercise any other rights or remedies provided in the Forcible Entry and Detainer Act, 735 ILCS 5/9-101 et. seq. (West 1996).

13

i. MASTER GONZALEZ CLTD.doc: 13/18/03

7.11.     The lien of assessments provided for herein shall be subordinate to (a) the lien of any first mortgage now or hereafter placed on the Lots and Units, and (b) the lien of any second or subordinate mortgage that is recorded against any Lot or Unit prior to the time of a delinquent assessment for which a lien foreclosure action is pursued under this Declaration. In the event of the issuance of a deed pursuant to the foreclosure of such prior Mortgage or in lieu of such foreclosure, the grantee of such deed shall take title free and clear of any lien for assessment authorized by this Declaration so long as any such lien shall have arisen prior to the date of recording of any such deed.

## ARTICLE VIII
## GENERAL PROVISIONS

8.1.     The covenants and restrictions of this Declaration shall run with the land, and shall inure to the benefit of and be enforceable by the Board, Developer, Declarant, or the Owner of any Lot or Unit subject to this Declaration, their respective legal representatives, heirs, successors, and assigns, for a term of twenty (20) years from the date this Declaration is recorded in the Office of the Recorder of Deeds of Kendall County, Illinois, after which time said covenants shall be automatically extended for successive periods of ten (10) years, subject to amendment as hereinabove provided.

8.2.     If and to the extent that any of the covenants would otherwise be unlawful or void for violation of (a) the rule against perpetuities, (b) the rule restricting restraints on alienation, or (c) any other applicable statute or common law rule analogous thereto or otherwise imposing limitations upon the time during which such covenants may be valid, then said covenant shall continue and endure only until the expiration of twenty-one (21) years after the death of the last to survive of the now living lawful descendants of any current or former Presidents of the United States living at the date of this Declaration.

8.3.     If at any time or times the Board shall deem it necessary or advisable to rerecord this Declaration or any part thereof in the Office of the Recorder of Deeds of Kendall County, Illinois, in order to avoid the expiration hereof or of any of the covenants or other provisions herein contained under any provisions of Illinois law, it shall submit the matter to a meeting of the Members of the Association called upon not less than ten (10) days' notice, and unless at such meeting at least two-thirds (2/3) of all said Members shall vote against such rerecording, the Board shall have, and is hereby granted, power to so rerecord this Declaration or such part thereof, and such rerecording shall be binding upon all Owners of any part of the Property in every way and with all the full force and effect as though such action were taken by each of said Owners and the rerecorded document executed and acknowledged by each of them.

8.4.     Each grantee of Declarant, by taking title to a Lot or Unit, and each purchaser under any contract for a deed of conveyance pursuant to which said grantee will take title, accepts said title

14

Area as amended after an Annexation may increase or decrease.

Each and all of the provisions of this Declaration and the Exhibits attached hereto, as amended by any Amended Declaration and the amended Exhibits attached thereto, shall be deemed to apply to the entirety of the Property, including all such Additional Land as well as all existing Property, and to the entirety of the Common Area, including such Common Area added by an Annexation, as well as all previously existing Common Area.

The recording of an Amended Declaration shall not alter or affect the amounts of any liens for common expenses due from any existing Owner prior to such recording, nor the respective amounts theretofore assessed to or due from existing Owners for common expenses or other assessments.

9.3.    Consent to Amendment and Annexation.    Each and all of the Owners, of all of the existing Property and all of the Owners of the Additional Land added hereafter, and their respective mortgagees, grantees, heirs, administrators, executors, legal representatives, successors and assigns, by their acceptance of any deed or mortgage or any other interest in or with respect to any such Property, shall be deemed to have expressly agreed, assented and consented to each and all of the provisions of this Declaration, with respect to the recording of Amended Declarations as aforesaid which may amend and adjust their respective interest in the Common Area and added Common Area from time to time as hereinabove provided; and hereby further agree to each and all of the provisions of each and all of said Amended Declarations which may hereafter be recorded in accordance with the foregoing provisions of this Declaration.

## ARTICLE X

## ENFORCEMENT

The covenants and restrictions may be enforced by any proceeding at law or in equity, either to restrain violation or to recover damages, by the Association, against any person(s) violating or attempting to violate any covenant or restriction. In addition, the Association shall recover its reasonable costs of enforcement (including attorneys' fees) against any Owner (but not the Declarant or Developer) found to be in violation of any covenant or restriction of this Declaration. The Village has the right but not the duty to enforce the covenants and restrictions.

## ARTICLE XI

## AMENDMENTS

This Declaration may be amended provided any such provision for amendment states that amendments to all covenants or restrictions applicable to the Stormwater Detention Facilities is

18